The document below is hereby signed.

Signed: December 12, 2013



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

```
                UNITED STATES BANKRUPTCY COURT
                 FOR THE DISTRICT OF COLUMBIA
```

|  |  |
|---|---|
| In re ) | |
| ) | |
| UZOMA CARLIN NWATULEGWU, ) | Case No. 13-00009 |
| ) | (Chapter 7) |
| Debtor. ) | |
| ) | |
| _____ ) | |
| ) | |
| ) | |
| KINGSLEY OPARAH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary Proceeding |
| ) | No. 13-10011 |
| UZOMA CARLIN NWATULEGWU, ) | Not for publication in |
| ) | West's Bankruptcy Reporter. |
| Defendant. ) | |

MEMORANDUM DECISION SUPPLEMENTING
ORAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

At the conclusion of the trial on December 2, 2013, the court issued an oral decision constituting its findings of fact and conclusions of law. This *Memorandum Decision* supplements that oral decision.

I

The debtor appropriated for his own purposes funds the

plaintiff entrusted with the debtor to be used to pay down the lien on the car, a BMW, that the plaintiff was purchasing from the debtor. The plaintiff claimed that this was an embezzlement for which the ensuing debt for damages is nondischargeable under 11 U.S.C. § 523(a)(4).

The written agreement of the parties was that the debtor was going to pay the BMW's lienholder (which apparently retained possession of the title to the BMW) the $22,000 that was given to him by the plaintiff, after which only a small balance should remain, and that the debtor would then pay off the remaining small balance at a later time so that he could pass a clean title to the plaintiff. The debtor failed to pay the BMW's lienholder the $22,000 the plaintiff gave him. The debtor admitted in his answer to the complaint in this adversary proceeding that he could not produce any evidence that he paid the lienholder the $22,000.

II

One of the elements of embezzlement is the existence of fraud in the appropriation of entrusted property. In *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 40 L.Ed. 422 (1895), the Court defined embezzlement "as the fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come." Courts have followed that definition in applying the embezzlement exception to discharge under § 523(a)(4) to

discharge of a debt.  *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998); *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996).  The plaintiff proved that the appropriation here was fraudulent.

The fraud element of embezzlement does not require a showing of misrepresentational fraud.  *Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 116-17 & n.7 (B.A.P. 6th Cir. 2007) ("The proper, broader standard also covers those instances when a debtor is given possession of, or control over, a creditor's property and then decides to wrongfully take the property at some later time.").  Instead, the fraud required is "fraud in fact, involving moral turpitude or intentional wrong."  *Driggs v. Black (In re Black)*, 787 F.2d 503, 507 (10th Cir. 1986) (quoting *U.S. Life Title Ins. Co. v. Dohm (In re Dohm)*, 19 B.R. 134, 138 (N.D. Ill. 1982).  The fraudulent intent element of embezzlement might not exist in a case because "[o]ne can wrongfully appropriate [property] while acting under an erroneous belief of entitlement."  *In re Miller*, 156 F.3d at 603.  Here, the debtor was clearly not operating under an erroneous belief that he was entitled to use the entrusted funds for his personal purposes.

The circumstances show that the debtor acted fraudulently. The parties' agreement was plain as to the restricted use to which the funds were to be put, and the debtor knew he was not authorized to use any of the $22,000 for his own purposes, yet he did.  After repeated inquiries by the plaintiff as to what was

happening regarding transferring him a clean title, the plaintiff became frustrated and sued the debtor in the Superior Court of the District of Columbia.  Not until a hearing before the Superior Court did the debtor disclose to the plaintiff that he had failed to remit the $22,000 to the lienholder.  The debtor knew it was wrong to appropriate the funds for his own purposes, intentionally acted in disregard of the obligation to use the funds for a restricted purpose, and delayed disclosing his wrongful act.  The evidence clearly established fraud.

                                III

Although the debtor testified that he made a payment of $10,000 to the lienholder, he presented no written evidence to show that the funds he used to make that $10,000 payment (if, indeed he did make such a payment) were part of the $22,000.  His answer admitted that he could not produce any evidence that he paid the $22,000 to the lienholder.  His testimony that he used $10,000 of the $22,000 funds entrusted to him to make the $10,000 payment to the lienholder is not credible.

In any event, by failing to pay over the entire $22,000 to the lienholder, the debtor put the plaintiff in the untenable position of facing a debt on the car that exceeded his means to pay the balance in order to avoid a repossession by the lienholder.  A repossession ensued, and the plaintiff lost the car towards the ownership of which he had entrusted the $22,000 with the debtor.  The damages arising from the embezzlement

include the plaintiff's loss of the entire $22,000,[1] not just that portion that was misappropriated by the debtor (if, indeed, the debtor did use $10,000 of the funds to make a $10,000 payment to the lienholder).  A nondischargeable debt includes all of the damages flowing from the wrongful act.  *See Cohen v. de la Cruz*, 523 U.S. 213, 219 (1998) ("Once it is established that specific money or property has been obtained by fraud ... 'any debt' arising therefrom is excepted from discharge.").

                                IV

A judgment follows declaring the debt, reduced to judgment in the Superior Court, to be nondischargeable.

[Signed and dated above.]


Copies to:  All counsel of record; Kingsley Oparah.

---

[1]  The Superior Court appears to have adjusted the $22,000 downward for an insurance claim payment for damage to the car that the Superior Court caused to be paid to the plaintiff.